Good morning, Your Honors. Richard Blasco for the appellants, John and Anne Henrichs. I believe that this case was well briefed in the Henrichs reply brief with regard to what is a claim. When this particular claim arose, it arose almost two years after the FGIC was appointed as receiver for Capital Bank. This claim seems to be, with the state court proceedings and even with the district court, seems to be some type of moving target out there. But the facts, even in the opposition's brief, clearly indicate that the claim arose in January of 1996. The FGIC was appointed receiver in late 1993. This claim arose about two months after the FGIC entered into a settlement agreement whereby the consideration passed. They released the guarantors. They did a number of things. And I know this case has gone through a long process, but it appears to me that it is undisputable that the state's courts had no jurisdiction at any time. Well, that's really the issue. I mean, we have to assume at this stage of the proceedings, of course, that everything alleged in the complaint is true. So we, in effect, assume, you know, there's a claim and there's a wrong. But it would help, I think, if we went through your claims. The real question is, is there jurisdiction in the federal court to do anything about what you're complaining about? So what you just said is, you know, that the state court didn't have jurisdiction, in your view. If I look at your first claim, I read it to say that you want us to declare the state judgment void. Is that correct? That's correct, Your Honor. And so given the state of the law on Rooker-Feldman, just to be candid, I'm hard-pressed to figure out, with a claim stated so clearly like that, and match that up against the Rooker-Feldman cases which say that the federal court wouldn't have jurisdiction, do you have any contrary authority that would give us jurisdiction to decide that first claim? Well, I believe that I've cited it in the brief, in the sense of when you say authority, if a judgment is void, it can be challenged at any time. And in our particular situation ---- No, but that's a different statement. I mean, you can challenge through the state court process, of course, the jurisdictional taking by a state court, and you can challenge that up through the California Court of Appeals and maybe even on up to the California Supreme Court. But if you have a state court judgment and then you're really coming in, you're saying to the federal court, I'd like you to look at the state court, I'd like you to declare that the state court judgment is void because it didn't have jurisdiction, that seems to fall squarely in what the Supreme Court has said the federal courts don't have the authority to do. And, you know, to some degree there was sort of some passing in the night in the briefs on this subject because your arguments tended to come back to the substance of why you felt the state court might be wrong. But before we ---- we have to just assume maybe that's true. Just for purposes of talking, I assume that's true. But it doesn't get me past this jurisdictional problem. And so that same jurisdictional problem in one form or the other seems to pervade your other claims as well. Well, and it does. I recognize that if this Court ---- if this Course believes that it does not have the jurisdiction to void the state court judgment, the particular case is over. But in this particular situation, and this may be one of the only exceptions, although there's always other exceptions, but to me this is almost the only exception to Brooker-Feldman is where the lower court judgment is void because the lower court lacked any jurisdiction to be hearing this type of a claim. But why did the lower court lack jurisdiction to be hearing this claim? Why? Why? Because the claim was ---- the claim arose two years after the FDIC was appointed receiver for the FDIC ---- for the ---- for a capital bank. And as a ---- so that there is an overflow or a crossover with respect to if a claim arose before the FDIC was appointed as receiver, then the state court has concurrent jurisdiction, according to the California courts, with the Federal court to complete those claims that arise and are filed and are commenced before the FDIC is appointed as receiver. That is not this case. This case, the claim arose over two years after the FDIC was appointed and two months after the FDIC entered into the settlement agreement. Who filed this case in state court? Valley View Development, the defendant in this action. And their claim in the state court was that there was a lien on their property, which is this, the deed of trust of capital bank. And their claim is that, which is clearly a claim, whether they're right or wrong, no matter what the decision is on that claim, it is a claim. And because it is a claim, that gave the Federal courts exclusive jurisdiction. Now, that issue also has been raised at the appellate level in the state court in this action, and it has been raised at the California Supreme Court level. At the California Supreme Court, when we filed the ‑‑ when we filed our appeal from the state court judgment, we expected to get the card back in 10 days saying denied. We didn't. The California Court of Appeals, on their own motion, extended their period to consider whether or not the California state courts had jurisdiction. Ultimately, they denied our application, our appeal. And for us, that was the end of the story with respect to this litigation. And it would be the end of the story except that the state courts had no jurisdiction to ever hear any of this case or the issues in it. Was the FDIC's interest as a receiver ever affected by any of the state court judgments? Yes. Was it made a party? Was it a party?  No. It was not made a party, but its interests were affected by the state court judgment. In the second appeal in the state court action, the basis for that appeal was the reformation of the FDIC settlement agreement that was entered into over two years after the FDIC was appointed a receiver. And that reformation is what generated our cause of action against the FDIC for breach of contract. Now, that breach of contract claim doesn't exist if the state court judgment of reforming the FDIC settlement agreement to make the FDIC in default under the settlement agreement, if it disappears. And that's why in this proceeding, if the court finds the judgment void, the FDIC should no longer be a party to this action because they're no longer in breach of the FDIC settlement agreement, which affected my clients. Doesn't the reformation date back to the time of the original agreement by the parties when the state court said that there was absolutely never any intention to create that lien on the Valley View property? It doesn't relate back. When you're reforming it, you're saying this is what it said from the beginning. This was the understanding of the parties who ---- Well, the lien has always existed. What's come up is this secret agreement that's not documented anywhere and that's contrary to the written documents, which is the subordination and term agreement, that it was always the intent of the bank and the borrower and Valley View that when the final track map recorded that the lien on the Balboa lot would disappear. That's the exact type of secret agreement that Congress, when they adopted FIREA, was trying to get rid of and preclude. And so the lien exists. When you look at the opposition brief, they indicate that this issue arose in January of 1996 when Mr. Gelman pulled the title report on his property, the Balboa lot, and discovered that the capital bank lien was still on the lot. At that point in time, the capital bank lien had been transferred to the FDIC in 1973 and then subsequently was transferred to the Assanese, which my client was one of them, the Henricks. Well, I take your point that you can come to federal court if there is exclusive jurisdiction in the federal courts and there was no jurisdiction in the state court. And you predicate your theory, I guess your jurisdictional theory on the federal banking FIREA. I forget how we used to say when we were doing FIREA. FIREA is correct. Well, Anne McCarthy is the lead case, which you decided, and Sharpe. Right. So if you were correct on that, there certainly would be some leeway, because it would be a case that could only have been brought here to begin with and shouldn't have been prosecuted in the state court. But if we look at that statute, you started with the issue of timing. And I agree with you, timing is important. And I think you said that your claim arose in January of 96, that FDIC became the receiver in 93. No, no. It's not the Henricks claim. The Henricks acquired the Nominee to Trust. The Valley View's claim, they first asserted it in January of 1996, two months after the settlement agreement with the FDIC was executed, which was two and a half years after the FDIC was appointed receiver for a capital bank. But if I take the Henricks' claim against the FDIC, you filed that claim in 2004, approximately. That's correct. And the reason is at that point, so just kind of follow this out with me, and then maybe you can fill in the blanks. So if you filed that in 2004, by that time there is no FDIC status as a receiver for this situation. So how does the FDIC come into play vis-à-vis your claim as a receiver? The reason was that my client bought an asset from the FDIC. The FDIC, and this is kind of a summary, but it says here's a promissory note, and here's 14 pieces of property that secure the promissory note. You give me $300,000, and I'll give you these two assets, which happened. Well, what happened when a final judgment was rendered in the state court is that the 14th asset, that my client didn't have a lien on the 14th asset, at that point in time, it became a breach by the FDIC. I don't believe the FDIC ever breached the contract. I don't believe the contract ever should have been reformed. But, you know, the state courts decided to go along with that. And I should say the state court decided to go along with that with the caveat that this case has been appealed twice. In the lower court, it was appealed once. Let me stick with the FDIC, because I'm still... By the time they get into the act here in federal court, they've now been sued. And, of course, I assume, you know, they would stand up and say, well, sue us, but there is no receivership. So it's like suing the air, in effect. It's just there's nothing to sue. If there is no receivership or the receivership's been terminated, I then have to try to understand what would be the jurisdictional hook against the FDIC in federal court at the time you filed your suit that would permit it to stay in federal court and be, in effect, separate from all the state court proceedings with the non-FDIC people? Well, I believe in the Heno case, and there's two of those, H-E-N-O, there's a number one and number two. In the first case, it's my understanding that the court of appeals asked the same question with respect to, and it may not have been a termination of the receivership, but a distribution of all the assets of the receiver. So how can you be suing the FDIC? And it was RTC at that point in time. In H-E-N-O 2, they eventually said, whether the receivership exists or doesn't exist, and whether the assets have been distributed or not distributed, the FDIC still has, or RTC still has jurisdiction to hear claims. And that's why, in this particular situation, the FDIC, and I recognize that we're talking about two distinct things here. One is the Hendricks claim against the FDIC for breach of contract. But we're also talking about the FDIC and whether or not there is a claims process there, administrative claims process, that we have to follow, that we have to file a demand with them, which we did. The FDIC's response was that. We have no assets, and we have no receiver. I'm missing something here. As I understand it, the state court entered judgment two years after the FDIC terminated its receivership. The receivership didn't exist when the state court judgment was entered. If I understand correctly, your argument goes to the statute, which directs jurisdiction towards receiverships. Two years seems a long time to carry over some type of jurisdiction. How is there any involvement with the receivership that terminated two years before the state judgment? And what's happening here is that you have a breach of contract, and so you're looking at a statute of limitations. But at the same time, we're bringing in this receivership issue, which does the receivership terminate the FDIC's liability on its breach of contract? And if we look at one situation where the receivership terminated before they breached the contract, and that didn't happen, I don't think, in our situation, and then you look at a situation where the receivership terminated after the breach of contract, in both situations, you still have the breach of contract. And just because it's a receiver and the receivership terminates does not eliminate the breach of contract claim. And I recognize, too, that we're going around and around on the breach of contract claim. I don't think the breach of contract claim exists. It only exists because the state court incorrectly reformed the FDIC settlement agreement without the FDIC being a party to that action, which would have never occurred. So isn't your real beef with the state court determination? That's what caused you, that's what you're saying caused you the wrong that gave rise to this cause of action. But really, you're, it's not really against the FDIC. You're saying that the state court should not have reformed the contract. No. Well, correct. I'm saying the state court shouldn't have reformed the contract. But the reality is, they did. Right. And my client didn't. But then you're into Rooker Feldman, it seems to me. But then my client didn't have a cause of action until that breach occurred. And again, I don't think the breach ever occurred. It only occurred because of all these imaginations the state court was going through with respect to trying to figure out how to allow Valley View to keep this property despite the fact that there's no written documents that release the lien. And the documents expressly create the lien. With the structure of the deal, I mean, a 99-year lease with as soon as an agreement, as soon as we can get the final subdivision tracked, we'll pay you a dollar. And they're paying $12 a year on this. And when you look at it, it's clearly structured to be as close to ownership as possible. That's correct. But Capital Bank, so that's the transaction between GPA, the borrower, and the buyer of the property and the seller of the property on the ground lease. Capital Bank required Valley View to subordinate its interest, all of its interest, its lease, its option to purchase, all of it, to Capital Bank. And so when it subordinated, it agreed to subordinate that interest so that the interest to Capital Bank is superior to that of anything in the lease. And the issue that you raised is what did cause heartburn for the superior court judges to keep looking at this going, is there a 99-year lease? I'll give the rest of your time for rebuttal, and we'll hear from the various other parties, and then you'll be back. Thank you. Before you begin, would you just let us know on behalf of the defendant at the lease if more than one person is arguing and how you intend to split your time? Yes, Your Honor. All three of us are going to argue on Capitol Hill. Okay. Okay. I'm taking eight minutes. Mr. Edwards for Valley View and Gell-Mann will take seven minutes, and Mr. Weinberger will take for Mr. Blaha and Granada Plaza will take five minutes. And I've asked Mr. Edwards to stand up at 12 minutes so that he gets his time and I don't go over. Okay. Self-police. All right. All right. Go ahead. May it please the Court, I'm Kathleen Gunning, represent the FDIC. The district court properly dismissed this case for lack of jurisdiction as to the FDIC because the claim was moot and it was not timely filed by the Hendricks. A claim is moot when it does not present a case or controversy for which effective relief can be granted. You represent the FDIC. That's correct, Your Honor. Could you start off by responding to the argument that's been made for 19 and a half minutes that indicates that so long as a cause of action arises when there's an FDIC receiver, then the statute does not bar the action. And even though the receivership had been terminated two years before the State action, the cause of action arose prior to that time. What's your response to that? My response, Your Honor, is the jurisdictional sections that he's relying on relate only to a claim against the FDIC. There is not independent. As a receiver. That's correct, as a receiver. There is not an independent jurisdiction that would allow any claim that arose during the receivership or in relation to its receivership asset to be in Federal court or to be put through our administrative claims process. There are thousands of assets that have gone through our receiverships, and many of them have been – most of them have been sold. So specifically he raised the question of a cause of action. Say there is a cause of action against the FDIC as a receiver, and it's a valid cause of action, but the receivership is terminated and it goes on. Are you saying that that cause of action that's a valid cause of action for breach of contract disappears as far as the FDIC receiver is concerned? That's correct. And if so, what is the statute or the case that says that? The statute is 1821d5c2. I know the statute. Does it say specifically in there that valid causes of action are waived or eliminated once the receiver has been terminated? No. It says that you must file your claim in time to permit payment from the receivership assets. And so it's kind of like when the receivership terminates, then you don't have – you do not get a claim paid out of the receivership assets. Does a claim mean a cause of action, a judgment? Or does it just mean I have a cause of action for $50,000? A claim – in the receivership, Your Honor, you first have to file in the administrative claims process against the receiver. And then when you get a decision, you can go to court if it's adverse or the time expires. But – and if you don't file your claim within the time period, either by the bar date or by the end of that statutory period, then no court can enter a judgment against you. So what's the best case that you have for that position? Basically, the Murphy case and all the other cases that I cited in relationship to basically provide that for claims that happened here, it was the breach by the And so there can be a claim filed after the bar date against the receiver, but claims must be filed either within the time period that you're given by a letter, if the FDIC knows that you've got a claim against us, we'll send you a letter and say get your claim in by X date, or by the statutory time period, which is – allows in time to permit payment from the receivership assets. And if you don't follow – if you don't get it in within those times, then under 1821d13di, the court – no court has jurisdiction over any claim for an act or omission of the receiver. It was – We have kind of an odd situation here, because I kind of hear two claims. One is when counsel files on behalf of the Hendricks in Federal court, and says I now have a claim against the FDIC. So that's kind of one claim. And then there's almost a backhanded claim to say, but my real complaint, as I heard him saying, is we've got this sort of bizarre reformation of the settlement agreement, which implicates the FDIC, and that's really what caused the whole upset to begin with. So let's take that one first. Was the FDIC a party? We were not a party, and we were not affected. The order that they entered ordered the Hendricks to reconvey the Balboa lien, not the FDIC. And under 1821J, no court can restrain or affect the exercise of powers or function of the FDIC as conservator or receiver. You're right, it's an odd posture, but in terms of us not being a party and there being no right to injunctive relief against us, we were not affected. So that's the reformation of the settlement agreement. That's correct, vis-à-vis the FDIC. And then there's kind of a new claim, if you want, that's now made in the Federal court. That's correct. And we're arguing that's. Directly against the FDIC. That's correct. And we're arguing that's moot because of the receivership and there's no assets from which you can recover and nobody liable for it. And alternatively, that the claim was not timely filed because it was filed in March of 2004, and that was after the receivership terminated. And under that section I gave you, 1821D5C2, you've got to file your claims in time to have permit payment from the receivership assets. Now, in terms of just plain Federal jurisdiction, they've been arguing that there should have been Federal jurisdiction for the claims with Gelman et al., Valleyview and whatever. The sections of the statute, 1821D6A, which allows you to go to court, provides that it must be a claim against a depository institution, and the receiver succeeds to that, and it says a claimant may file suit. So that you've got to have a claim against the receiver to get jurisdiction under that particular section. The other section of the statute. In other words, if there had been a claim under that in the State court, you would concede that that probably would have had exclusive jurisdiction in the Federal court? Right. If it was a claim in the State court against the receivership for a claim that had gone through the process, we would say it would have exclusive jurisdiction if it was against the FDIC receiver. The other section is D13D, and they say a sect is otherwise provided, and that refers to the claims process, D5 and D6. It says, Claims with respect to assets of depository institutions for which the corporation was appointed receiver. No court should have jurisdiction over those claims. But implicit in that is that the claims against those assets are assets that are then being held by the receiver. The second clause says, Including assets which the corporation may acquire from itself as receiver. So that, if it was just no court shall have jurisdiction over any asset that has been in receivership, you would need that second clause to kind of clarify that it includes assets that the corporation got itself as receiver. The corporation is in its corporate capacity. So our view is that neither one of those sections provide an independent jurisdictional, Federal jurisdictional grant absent a claim against the receiver. In the cases that I gave you, Your Honor, the Murphy and all the cases cited therein gave you the process that you go through in terms of, for claims that are filed after the bar date, you file in the receivership. Thank you, Your Honor. Good morning. My name is Barry Edwards, and I represent Valley View Development. What I would like to mention this morning is basically that the State Court found and the Valley View contended that there was no necessity for the FDIC to be a party. It was not an indispensable party under the claims being made by Valley View to quiet title at the time. And the argument was that the original understanding of the parties, including Capital Bank, was that the Valley View property, the Balboa parcel, would not be, not remain subject to the collateral after the lot split and after the exercise of the option that Valley View had with regard to obtaining a grant deed from the borrower. So you're arguing that the secure, the lien was never an asset of the receivership? Correct. That Capital Bank understood that at the time that it entered into the agreements with the borrower, and that I believe that the best evidence of the fact that it was not an asset of the FDIC is that when the FDIC filed a creditor claim in the bankruptcy of the borrower, it did not include the Balboa property. It only included the assets of the Chatsworth properties. Well, the Henrichs Council refers to this as some kind of a secret deal that you kept it secret from the FDIC. What documents would there have been that would have allowed it? All of the documents, there are three documents that were basically entered into at the time of the original loan, including the ground lease and the subordination and the non-disturbance agreement. Those agreements were executed by Capital Bank. They were also, Capital Bank was also a signatory on the lot split and approved that. So all of these documents existed prior to the time that the FDIC took possession, and there were no secret documents or secret agreements that were not disclosed to the bank or to the FDIC, for that matter. If you have any other questions, I'll be happy to answer them. It appears not. Thank you. Thank you. May it please the Court. Peter Weinberger appearing on behalf of Appellees Michael Blaha and Granada Plaza Associates. And I want to speak very, very briefly. My clients have the least to do with this case of anything. They're simply being sued on an indemnity claim. Basically, the appellant is asking my clients, who want nothing to do with this dispute, to pay his attorney's fees so we can keep on litigating it. With respect to that dispute, it's simply a question of contractual interpretation. We prevailed on that issue on summary judgment. We weren't even in the case when the decision about whether there was a reformation of the agreement was, in fact, decided. And we shouldn't be in this case regardless of how the Court determines the dispute between Valley View on the one hand and the Hendricks on the other. Well, I guess my question is, maybe it's more of a technical one, but it seems that the district court put everything under Rooker-Feldman. And it wasn't really clear to me that your client, you know, your slice of the pie in which you're being sued on really falls in Rooker-Feldman, as opposed to either claim preclusion or something else. I think it can fall under Rooker-Feldman, but I think the main issue is that the Court doesn't have jurisdiction of it because it's a state court issue. There's no Federal question involved here. They are relying on FIREA, which deals with assets of the FDIC. But here the only asset we're talking about is the assets in the pockets of my client. So, I mean, is your claim that there's – is your position that there's no claim stated? I mean, there are – these are different important articulable legal theories. So on what – what is your legal theory as to why you think you shouldn't be in this lawsuit in the Federal court? I think the basic Rooker-Feldman would probably be the base – best basis for it, and that the state courts already decided it and it doesn't need to be relitigated here. And there's no issue of the state court judgment being void under FIREA. What I heard – what I thought I heard you saying a second ago, though, was that there was no basis for feral jurisdiction and that there was no subject matter jurisdiction over the claim? Yes, that's true. And can you say why is there no subject – because there's no Federal law? There's no Federal law involved. It's just a contractual interpretation. State contract. There's no diversity. There's no diversity. There's no diversity. So, okay. And I will yield my time unless the Court has any other questions to counsel. Well, I have some questions about Rooker-Feldman, and I don't know when you have a large group of ballplayers, you don't know which one is the hitter and which one is the pitcher. I believe that would be Mr. Edwards on that. We, in fact, simply adopted his arguments in our brief. So I'd prefer to defer to him if that's all right.  Whoever the designator hitter is. The district court, as Judge McEwen said, has gone off on Rooker-Feldman, and I've heard a lot of arguments except the ones that we have to rule on whether the district court was right or wrong. And I've made, I've understood, I think, your briefs, but there is one problem that I'm not sure in my own mind whether Rooker-Feldman is involved in all of the issues. And I won't have to reach that as far as GPA and Gelman and Blatter are concerned on the indemnity issue if there is claim preclusion under the state judgment. But unfortunately, we have had no briefing of the state law on claim preclusion. So I wonder if you have any information you can grant us on that basis. I thought that we had mentioned something in our brief with regard to the district indemnity. I believe that there are no exceptions at all to the Rooker-Feldman bar to the district court review, but I believe that as far as Rooker-Feldman is concerned, it does apply to all of the issues, including the indemnification. Well, let's just, I want to also maybe to follow up on Judge Wallace to clear up where your client stands. Basically, Mr. Weinberger made clear his clients just fall in the indemnity. That's claim, I think, the third claim. There's four claims, contract claim, declaring the state judgment void, the injunction, and then the indemnity, which he mentioned. From Valley View's standpoint, are you a party, a claimed party to each of these claims or to just some of them? No, we're a party to all of them, I believe. Okay. Valley View's position basically is that Rooker-Feldman bars the plaintiff's claim to void the judgment in the federal court, and I believe that there isn't any evidence that have been, or any argument that supports the fact that Rooker-Feldman, there are any exemptions to the Rooker-Feldman position. Well, I think there's some question about whether the, at least there's a question whether the indemnity claim is covered by Rooker-Feldman because it doesn't set aside the state judgment. It's an indemnity claim. It certainly could be argued that Rooker-Feldman doesn't exist for the indemnity claim. Unfortunately, as I pointed out, I have not found, I could be mistaken, I haven't found any California briefing on a California claim. Also, the breach of the settlement contract appears to me, at least there's a question that could be raised that it doesn't challenge the state court judgment. So there are some issues that maybe the district court may or may not have been correct as to Rooker-Feldman having the sweep that he would have, and then whether or not there may be alternative reasons why we might affirm if Rooker-Feldman doesn't apply. So I needed a little bit of help in those areas, and I'm not sure we've, I've gotten it from the briefs. Roberts, I believe that in Judge Snyder's court, when she gave us the opportunity to brief all of the issues at that point in time with regard to whether or not there was an injunction that should be granted and whether or not Rooker-Feldman applied to all of the contested issues brought up by the plaintiff at that time, and there were certain arguments made with regard to all of the claims, including indemnification and including the issues dealing with breach of contract. And I understand that Judge Snyder did review that quite effectively and found that Rooker-Feldman applied to the entire action, and she dismissed the entire action. I mean, I may be, you know, being too precise, but I read, for example, the breach of contract action as only against FDIC under the way it's phrased plus the request for relief, and then as Judge Wallace says, I view the indemnification as broader, but maybe you can disabuse me of that and put your client back in the mix for all the claims. Roberts. Now, I do agree with you that with regard to the breach of contract, it's only against the FDIC what we're talking with regard to the reaffirmation agreement. And they are there claiming, the appellate is claiming that the FDIC breached that agreement by failing to disclose. Right. That's not part of what Valley View is involved in. Valley View did ask for the reaffirmation. You told me just a minute ago that Valley View is on the hook for all these claims. Maybe I'll just ask again, and maybe you can tell me. Okay. That was my mistake. There's four claims. Which ones? And we have to do this defendant by defendant, claim by claim. In your view, which of these claims that are made by the Hendricks is your client alleged to be on the hook for? Not for the breach of contract. Maybe for the indemnification. It's not clear. Because they are asking for attorney's fees. Thank you. I think you're down to 15 seconds. So if you have one statement to clarify or help us out. Just to clarify, I always mix up McCarthy and Murphy, and I think I gave you Murphy. It should be the McCarthy case, Your Honor, when Judge Wallace asked me for a case. Well, I understand the FDIC is on this breach of contract, because I understand you claim it's moot. Correct. The same reasons you argued initially, and that it can go off on mootness and you don't get to the Rooker-Feldman. As a matter of fact, in your brief, you didn't even push Rooker-Feldman. You were on the mootness. So I got your position there. Okay. Thank you, Your Honor. Thank you. Mr. Fletcher, you have a minute and a half left. Thank you. Real fast, this is like the immigration case just before us. Congress comes up with a set of rules for a system, and then in the prior case, didn't complete them. And you guys are here trying to figure out, what in the heck are we going to do? This is a similar situation. Congress came up with a set of rules called FIREA, and fortunately, they had one shot to refine them, because the actual rules started with the Odentic Doom Doctrine. But then they eventually, when all those savings and loans or a number of savings and loans started crashing in the 90s, they adopted what's called FIREA. And so they at least had one go around where they solved a bunch of errors, and now they had another go around, and there's still a bunch of loopholes. With respect to the indemnity agreement, one thing that's important to do in this case is to always focus on what documents you're talking about. The indemnity agreement arises out of the FDIC settlement agreement. It arises out of an act or omission of the FDIC, which grants the federal court's exclusive jurisdiction to interpret the FDIC settlement agreement, even though the Henrichs have now stepped into the shoes of the FDIC. No one agreed to indemnify the Henrichs. They agreed to indemnify the FDIC, and when the FDIC sold the assets as the assinees of the FDIC, they accepted the same indemnification rights as the FDIC did. Can you call that, is that the assignment agreement? What do you call that in your complaint? No. The FDIC settlement agreement. The settlement agreement. Right. And at the beginning of my brief, there's a list of the definitions. Right. Because the case has been around, and the definitions just keep growing. Because the settlement agreement lists who the parties are, and it doesn't list Valley View as one of the parties to the settlement agreement. So how can your claim be, for indemnity, be against Valley View? It's not. Our claim for indemnity is against the parties that were the indemnitory, which is Mr. Gelman, the President of Valley View, Mr. Blaha, and GPA. They were the parties to the FDIC. But that's Gelman individually. I'm sorry? Gelman individually. Mr. Gelman individually, because he indemnified individually. And his indemnification was that no claims would come up after we signed the settlement agreement. And what happens two months later in January, all of a sudden, up pops a claim, not from Mr. Gelman, but from Mr. Gelman's corporation, Valley View Development. And he goes, oh, we now claim Mrs. McForty's property. Did the State court handle that claim preclusion issue, indemnity issue? Did the State court handle, decide the indemnity issue? Yes. They said there was no indemnity. I think they said there was no indemnity. It was confusion in the State court because they never got to that issue because we never got to the prevailing party portion of the claim. Yes or no, did they decide it? I can't answer that because until my clients prevailed in the action, their right to indemnification never arose. Well, you're arguing the merits. But the issue is, did the State court decide the indemnity issue? I think that one is clear. They may have decided incorrectly. It was a decision made. That's just the first part of the question. The question in my mind is, if the State court decided the indemnity issue, why doesn't claim preclusion prevent you from raising again here? That's the issue. If they decided the indemnity issue, it was because my clients were not the prevailing party and that my clients were not entitled to indemnification because this 14th piece of property, the Belleville lot, was not an asset or there was a reformation by the FDIC settlement agreement because the FDIC should have issued a partial reconveyance. When I started this, these claims with respect to where this reconveyance came from on the Belleville lot, it never existed. But it's a moving target, which the Hendricks had to deal with. The indemnity, though, decision flowed, in your view, from the incorrect decision on the other stuff. Correct. And it was a correct decision. If the Hendricks are not the prevailing parties, they are not entitled to indemnification. Right. Simple. So it's kind of a piggyback claim. It's all tied together in the situation. Unless there's further questions from the panel, then your time has expired. Thank you. Thank you all. Thank all counsel for your argument. This is complicated. The case of Hendricks v. Valley View is now submitted.
judges: Wallace, McKeown, Wardlaw